UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 16-10233-RGS

UNITED STATES OF AMERICA

v.

DONNA M. ACKERLY, et al.

MEMORANDUM AND ORDER ON VARIOUS MOTIONS
OF DEFENDANTS TO SEVER, DISMISS,
AND FOR A BILL OF PARTICULARS

November 15, 2017

STEARNS, D.J.

Before the court are various motions filed by defendant Donna Ackerly that are, with the exception of her motion to sever her case from the others, joined by her codefendants.[1] The court heard oral argument on the motions on October 24, 2017. For the reasons to be stated, the motions will be denied. The court will, however, issue several pretrial orders to expedite the trial. This case involves a low-intensity scheme by defendants, who are employees of a proxy solicitation firm, to obtain inside information on institutional shareholder voting. The target of the scheme was an employee of a proxy advisory firm who was plied with occasional tickets to concerts and sporting events. By the government's estimate at the hearing, the value of these

---

[1] The codefendants are Charles W. Garske, Richard J. Gottcent, and Michael Sedlak. The joint motions are to (1) sever certain counts of the Indictment, (2) to dismiss Count Five of the Indictment (in which only Garske and Sedlak are named), and (3) a request for a Bill of Particulars.

"bribes" totaled some $12,000 over the four and one-half years duration of the conspiracy.

(1) Motion to Sever (Ackerly)

There are two premises to Ackerly's motion to sever her case from the others – first that the government is proposing "to present mountains of evidence unrelated to Ackerly at a joint trial," and second, that extrajudicial statements of co-defendants Charles Garske and Richard Gottcent that the government seeks to offer, while not directly incriminating of her, do so by implication.[2] The first argument rests on a general assertion of prejudice, see *United States v. Boylan*, 898 F.2d 230, 246 (1st Cir. 1990), the second on Confrontation Clause considerations addressed by the Supreme Court in *Bruton v. United States*, 391 U.S. 123 (1968). As a general matter, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (antagonistic defenses do not establish a *per se* right to a severance). For reasons of judicial economy and to avoid inconsistent verdicts, there is a

---

[2] An earlier motion raised health concerns as a reason to expedite Ackerly's trial by severing her case from the others. That motion was denied and is not now being renewed.

strong preference that defendants indicted together be tried together. *United States v. Soto-Beniquez*, 356 F.3d 1, 29 (1st Cir. 2003). The preference becomes that much stronger when, as is the case with conspiracy, the "evidence featuring one defendant is independently admissible against a codefendant," thereby eliminating any improper spillover effect. *United States v. O'Bryant*, 998 F.2d 21, 26 (1st Cir. 1993); s*ee also United States v. Searing*, 984 F.2d 960, 965 (8th Cir. 1993) ("In the context of conspiracy, severance will rarely, if ever, be required."). Even outside a conspiracy context, where large amounts of testimony are irrelevant to one defendant, or where one defendant's involvement is far less than the involvement of others, the trial judge's denial of a motion to sever will not be second-guessed. *United States v. Levy-Cordero*, 67 F.3d 1002, 1007 (1st Cir. 1995) ("[T]hat a 'minnow' stands trial with the 'kingfish' . . . does not necessitate separate trials.") (quoting *O'Bryant*, 998 F.2d at 26). *Cf. Boylan*, 898 F.2d at 246 (prejudice "means more than just a better chance of acquittal at a separate trial."). In other words, prejudice from alleged evidentiary spillover must be "so pervasive that a miscarriage of justice looms." *United States v. Pierro*, 32 F.3d 611, 615 (1st Cir. 1994) (*overruled on other grounds*). That is simply not the case here.

The *Bruton* issue raises separate concerns. In *Bruton,* the Supreme Court held that the admission at a joint trial of a non-testifying accomplice's extrajudicial confession "'powerfully' incriminating a codefendant by name, violates the right of confrontation guaranteed by the Sixth Amendment. 391 U.S. at 135. A *Bruton* error poses too great a risk to "the practical and human limitations of the jury system" to be cured by limiting instructions. *Id.* at 135; *see also Lee v. Illinois*, 476 U.S. 530, 542 (1986) (same).

The Supreme Court suggested in *Bruton* that Confrontation Clause problems could be avoided by "deletion of [all] references to codefendants," 391 U.S. at 134 n.10, an approach later adopted in *Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("We hold that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."). The *Richardson* Court also rejected the so-called "contextual implication" doctrine, holding that there is no *Bruton* error if a confession which is "not incriminating on its face . . . [becomes] so only when linked with [other] evidence introduced later at trial. . . . Where the necessity of such linkage is involved, it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence. Specific testimony that 'the defendant

4

helped me commit the crime' is more vivid than inferential incrimination, and hence more difficult to thrust out of mind." *Id.* at 208.

*Richardson* left open the possibility that a confession might be admitted if the "defendant's name has been replaced with a symbol or neutral pronoun." 481 U.S. at 211 n.5. However, in *Gray v. Maryland*, 523 U.S. 185 (1998), the Supreme Court rejected the simple deletion of a defendant's name as a permissible form of redaction. "Redactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration . . . leave statements that, considered as a class, so closely resemble *Bruton's* unredacted statements" as to fall within *Bruton's* protective rule. *Id.* at 192. Acknowledging the policy concerns expressed in *Richardson*, that prosecutors not be forced by an overly-expansive application of *Bruton* to forgo joint trials, or to abandon the use of confessions altogether, the Court suggested that heavier editing, done so as to disguise the fact that any editing had been done at all, would pass the *Bruton* test. (The example given by Justice Breyer would have changed "Me, deleted, deleted, and a few other guys" to "Me and a few other guys"). *But see* Scalia, J., *dissenting*, at 203-204 ("The risk to the integrity of our system . . . posed by the approval of such freelance editing seems to me infinitely greater than the risk posed by the entirely honest reproduction that

the Court disapproves"). Conceding that *Richardson* "placed outside the scope of *Bruton's* rule those statements that incriminate inferentially," *id.*, at 195, the majority in *Gray* drew a distinction between statements that only become incriminating when linked by inference to other independent evidence, and "statements that, despite redaction, obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial." *Id.*, at 196.

Here, Ackerly raises a legitimate concern that repeated statements of Garske and Gottcent that "everyone" at Georgeson (the proxy firm where she and the defendants worked) knew of the alleged bribery scheme skirt dangerously close to the line that divides contextual implication from direct (if anonymous) references to her as among the "everyone who knew." The government by the end of its brief more or less acknowledges that to be the case, suggesting that the remedy lies in "a limiting instruction and redaction or replacement of the offending references." Gov't Opp'n at 10 (Dkt # 225). To that end, the court will order the government to submit for its review (and, if necessary, correction) the statements of Garske and Gottcent that it intends to offer at trial. The submission will be made no later than thirty days prior to the scheduled trial date.

(2) Motion for a Bill of Particulars (Garske, Gottcent, Sedlak)

Whether to order a bill of particulars in a given case is a matter of sound judicial discretion. *United States v. Abreu*, 952 F.2d 1458, 1469 (1st Cir. 1992). At the same time, because a bill of particulars strictly confines the government's proof at trial within its four corners, *see United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985), judges are reluctant to order particulars which, in their requirement for detail or otherwise, amount to the imposition of a straitjacket on the prosecution. Nor is a bill of particulars a proper means of extracting a résumé of the evidence that the government intends to offer at trial. *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978). Rather, the appropriate use of the bill of particulars is to ensure that a defendant is given reasonable notice of the nature and character of the crimes charged to avoid undue surprise or difficulty in preparing a defense, or to avoid double jeopardy. *Abreu*, 952 F.2d at 1469. As the hemming qualifications suggest, bills of particulars are rarely granted, at least in federal practice. *United States v. Sepulveda*, 15 F.3d 1161, 1192 (1st Cir. 1993).

At the core of this motion is the effort of defendants to discover the specific bribes and inflated invoices the government alleges were part of the conspiracy and intends to introduce as such at trial. To state the issue is to

exclude a bill of particulars as an appropriate device to achieve the result that defendants desire. At the same time, the government at the hearing represented that it has already identified the "bulk" of the instances on which it relies, that is, seventeen specific alleged bribes and seven invoices. Tr. Oct. 24, 2017, at 7 (Dkt # 233). Moreover, the government offered further to prepare a final exhibit list specifying the universe of bribes and invoices that it will offer at trial and to disclose that list to defendants prior to trial. The court accepts this offer as a reasonable resolution of the issue and will order that the exhibit list be produced no later than forty-five (45) days prior to trial.[3]

(3) Motion to Dismiss Counts 1 and 5 (all defendants)

These motions were largely dealt with over the course of the hearing. Defendants' argument is that Count 1 (the conspiracy count) is duplicitous in the sense that it charges two separate conspiracies as one (the bribery scheme and the bill padding scheme). The argument fails as it confuses true duplicity, the charging of two separate crimes as one offense, *see United States v. Valerio*, 48 F.3d 58, 63 (1st Cir. 1995), with a multi-crime

---

[3] To avoid any "straitjacketing" of the government's proof, while the court expects the government to exert its best efforts to produce a final exhibit list when indicated, it will allow the list to be amended as the trial approaches for good cause.

conspiracy said to have two or more related objectives (as alleged in the Indictment to pay bribes and then recoup the cost from the unknowing beneficiaries of the corrupt bargain).

The charging of multi-crime conspiracies is a not uncommon practice, although it places an additional burden of proof on the government and requires careful instruction of the jury as to what is required for a conviction.[4] "Whether a given body of evidence is indicative of a single conspiracy, multiple conspiracies, or no conspiracy at all is ordinarily a matter of fact" for the jury. *United States v. David*, 940 F.2d 722, 732 (1st Cir. 1991). A court must give a multiple conspiracy instruction if "on the evidence adduced at trial, a reasonable jury could find more than one such illicit agreement, or could find an agreement different from the one charged."

---

[4] The government argues that the twin frauds charged in Count 1 are in fact one interrelated conspiracy "and that all of the defendants not only agreed to commit both crimes, but did in fact do so." Govt's Opp'n at 7 (Dkt # 215). As the government recognizes, *id.* at 8, it has assumed the burden of proving at trial the existence of a single overarching conspiracy. *See United States v. Shea*, 211 F.3d 658, 665 (1st Cir. 2000). As explained in the drug trafficking context, "[a] number of factors come into play in determining whether the evidence establishes a single conspiracy, including (1) the existence of a common purpose, such as selling drugs for profit (2) the interdependency of various elements in the plan, such as whether the success of an individual's own drug transactions depends on the health and success of the drug trafficking network that supplies him, and (3) the degree of overlap among the participants." *Soto-Beniquez*, 356 F.3d at 18-19.

*Boylan*, 898 F.2d at 243. In essence, to be found guilty of a multi-crime conspiracy, "a conspirator must have *knowledge or foresight* of the conspiracy's multiple objectives . . . ." *United States v. Morrow*, 39 F.3d 1228, 1234 (1st Cir. 1994).[5] As the case law demonstrates, the issue is one to be resolved at trial and not by way of a motion to dismiss.[6]

Finally, I agree with the government that the motion to dismiss Count 5 for failing to allege a crime borders on the frivolous. As the government properly points out, an indictment is legally sufficient if uses the words of the statute and limns the essential elements of the crime charged. *United States v. Brown*, 295 F.3d 152, 154 (1st Cir. 2002). Count 5 as set out in the Indictment hews faithfully to the hoary and age-tested wording of the mail and wire fraud statutes and, as such, easily passes muster. Whether the government's proof on this Count is *factually* sufficient is a matter to be tested by an appropriate motion at the close of the government's case.

---

[5] Cases also hold that where a conspiracy charges more than one object, a conviction will be upheld if the jury is unanimous as to any one of them. *United States v. Mitchell*, 85 F.3d 800 (1st Cir. 1996). In such a circumstance, the trial judge would be well-advised to put special verdict questions to the jurors as to their finding with respect to each of the conspiracy's objectives.

[6] The motion to sever the bribery and the false billing counts as improperly joined under Rule 8(a) fails essentially for the same reason of interrelatedness, interdependence, and joint participation in the two schemes by all defendants.

ORDER

For the foregoing reasons, the motion to sever (Ackerly) is <u>DENIED</u>. The government will, however, submit the proposed redactions in the statements of Garske and Gottcent as ordered. The motion for a Bill of Particulars (Garske, Gottcent, and Sedlak) is <u>DENIED</u>. The government will, however, submit a "final" exhibit list as ordered. The motion to dismiss Count 1 as duplicitous is <u>DENIED</u>. The motion to sever (all defendants) is <u>DENIED</u>. The motion to dismiss Count 5 (Garske and Sedlak) is <u>DENIED</u>.

The court intends to place reasonable but strict time limits on the presentation of the case. To that end, it is further <u>ORDERED</u> that the government and defendants (collectively) submit an estimate of the number of hours each side will require for trial purposes, exclusive of opening statements and closing arguments, but including cross-examination of the witnesses of the opposing party. The parties shall provide this estimate to the court no later than 30 days from the date of this order.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE