UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 16-10233-RGS

UNITED STATES OF AMERICA

v.

DONNA M. ACKERLY ET AL.

MEMORANDUM AND ORDER
ON GOVERNMENT'S MOTION FOR RECONSIDERATION
OF THE COURT'S ORDER CONCERNING TRIAL LIMITS

January 16, 2018

STEARNS, D.J.

The motion for reconsideration is DENIED. While I expect the time limits the court has set to be respected, I recognize that in criminal cases, time limits, while permissible (and even encouraged), are not meant to be enforced inflexibly. Circumstances, and considerations of fairness, may require an adjustment in the time allotted as the trial progresses. *See Sec'y of Labor v. DeSisto*, 929 F.2d 789, 795 (1st Cir. 1991).

As the court observed in announcing its intention to impose time limits in the trial of *United States v. Glenn Chin*, 14-cr-10363-RGS-2, Dkt #926:

> The court's discretion must be guided by an assessment of the complexity of the case to ensure that the parties can "present[] sufficient evidence on which to base a reliable judgment."

*DeSisto*, 929 F.2d at 796. For example, the court cannot arbitrarily exclude or limit witnesses. *See, e.g., United States v. Colomb*, 419 F.3d 292, 299-302 (5th Cir. 2005); *DeSisto*, 929 F.2d at 794-796. In the criminal context, time limits must also account for special considerations not present in civil cases. In particular, a court must respect a defendant's right to testify in his own defense and his right to confront the witnesses against him. S*ee United States v. Morrison*, 833 F.3d 491, 504-05 (5th Cir. 2016), *cert. denied*, 2017 WL 670543 (Feb. 21, 2017). The court must also respect the prosecution's prerogative to choose the offenses to try, *see United States v. DeCologero*, 364 F.3d 12, 23-25 (1st Cir. 2004); *United States v. Zabawa*, 39 F.3d 279, 283-85 (10th Cir. 1994); as well as the government's need to meet its burden of proof on each count, *see Colomb*, 419 F.3d at 300.

*Id.*, Dkt #926 at 4-5 (Hereinafter Chin Trial Limits Order).

Nonetheless, the imposition of time limits plays a meaningful role and "serves several beneficial purposes," as I stated in that same order:

As a practical matter, it enables the court to efficiently manage its docket. *See DeSisto*, 929 F.3d at 795-96. It also recognizes and ameliorates the substantial burden a drawn-out trial places on jurors. *See United States v. Cousar*, 2007 WL 4456798, at *2 (W.D. Pa. Dec. 16, 2007). Finally, it promotes a more efficient presentation of the case, which not only improves the quality of jury comprehension, *see United States v. Warner*, 506 F.3d 517, 521-24 (7th Cir. 2007) (op. dissenting from denial of rehearing en banc), but also eliminates "[n]umerous objections or *sua sponte* interruptions by the court to debate what evidence is repetitious or cumulative," *United States v.* Reaves, 636 F. Supp. 1575, 1580 (E.D. Ky. 1986). As the court's present and past experience teaches, time limits focus the presentations of the attorneys to the benefit of the jurors, the court, and ultimately the lawyers themselves.

Chin Trial Limits Order at 2-3.

I also note that the government does not always assemble its trial plans with a surveyor's precision, but more typically overestimates the amount of trial time that a case will require. For example, in the recently concluded Chin trial, I was informed that the government's case-in-chief (under the same constraints imposed here) would require in excess of 100 hours of trial time to present – in fact the government used less than 45 hours and nothing that should have been said was left unsaid.

On a more philosophical note, I will repeat what was in the Chin Trial Limits Order – which issued as the trial of Barry Cadden, Glenn Chin's co-defendant (14-cr-10363-RGS-1), drifted into its third month:

> The court has additional concerns about the phenomenon of megatrials, that is, trials the duration of which is measured in months rather than weeks. These trials, which consume an inordinate amount of the court's time and focus, inevitably have an impact on the rights of other litigants who have equally pressing matters that do not get the attention they deserve as a result. They also drain the resources of the court, both financially and in person-hours, a burden that ultimately falls on taxpayers. And for the increasingly rare defendant who can afford a defense in a lengthy criminal trial, megatrials impose crushing costs and even the Hobson's choice between bankruptcy and vindication. Of greater concern, megatrials effectively eliminate from the available venire those jurors who cannot afford to take extended absences from their jobs, or who cannot afford the extra costs of child or parental care that months of service may entail, leaving largely jurors who are either retired or who, in a few fortunate instances, have employers willing to fund unlimited jury service. This risks undermining the representativeness of the jury eventually selected to serve. Megatrials finally tax the resources of the government itself by encouraging the overindictment of

cases and by drawing prosecutorial attention from other cases of equally pressing public concern.

Chin Trial Limits Order at 3-4.

These larger concerns are as lively today as they were then – perhaps even more so as the megatrial phenomenon continues to clog, and even dominate, the federal criminal justice system.

## ORDER

For the foregoing reasons, the government's order for reconsideration is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE